IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

EDMUND G. COWAN                                                                          PLAINTIFF

VS.                                                       CIVIL ACTION NO. 3:07cv585-DPJ-FKB

WILEY J. CALCOTE, et al.                                                              DEFENDANTS

REPORT AND RECOMMENDATION

This § 1983 action is before the court on the parties' cross motions for summary judgment.[1]  Having considered the motion, the undersigned recommends that the Defendants' motion be granted , Plaintiff's motion be denied, and that judgment be entered for Defendants.

Plaintiff is currently an inmate in a Georgia state prison.  During the relevant time period, Defendant Wiley J. Calcote was Sheriff of Lincoln County, Mississippi.   The remaining defendants were employed by the sheriff's department:  Steve Rushing as a deputy sheriff, Ralph Boone as administrator of the jail, and Ted Goleman and Marshall London as jailers.

In 1998, Cowan was serving a thirty-year sentence in a Georgia state prison for the following crimes: Two counts of theft by taking, assault on a police officer, entering an automobile, possession of tools for commission of a crime, possession of a firearm during the commission of a crime, and  possession of a firearm by a convicted felon.  On July 1,

---

[1]The other defendants have apparently identified the two John Doe defendants as Ted Goleman and Marshall London, as the motion for summary judgment includes their names as movants.  Although Plaintiff has made no motion to substitute these named individuals, the undersigned will refer to them by name for clarity.

1998, he escaped and fled to Mississippi, where he lived for seven years as a fugitive under the name of Robert Vivian until his arrest by Lincoln County officers on a charge of sexual battery on August 5, 2005.  His fingerprint was identified by the FBI as being that of Edmund Gerald Cowan.  At the request of the Georgia Department of Corrections, the Lincoln County Sheriff's Department placed a non-bondable hold on Cowan.

Because Cowan refused to waive extradition, Georgia instituted formal extradition proceedings, resulting on September 28, 2005 in the Governor of Mississippi's issuance of a rendition warrant for Cowan's return to Georgia.   The rendition warrant was stamped "received" by the Lincoln County Sheriff's Department on October 3, 2005.

On October 6, 2005, while still in the custody of Lincoln County, Cowan, through his attorney, filed in the Lincoln County Circuit Court a motion for a writ of habeas corpus. In the motion he argued that he should be released because neither the sexual assault charge nor the rendition warrant provided a basis for his continued custody by Lincoln County.  According to Cowan, the grand jury had returned a no-bill on the sexual assault charge, and the rendition warrant was invalid because the affidavit and arrest warrant from Georgia charging him with felony escape were not accompanied by an exemplification or other certifying document as required by the federal extradition statute. Cowan requested relief in the form of discharge and release or, alternatively, release on bail in the event the court allowed the state of Georgia additional time in which to perfect the extradition documents.  The Lincoln County Circuit Court set a hearing date of October 31, 2005 on the motion, and a summons and writ of habeas corpus for Cowan's appearance at the hearing was issued to Sheriff Calcote.  The same day as the summons and writ were issued, Cowan's attorney, Matthew Kitchens, came to the sheriff's

2

department to serve these documents on Calcote.  Calcote was not present, however, so Kitchens left the papers with Rushing, who placed them on Calcote's desk.

On October 9, 2005, while Plaintiff was awaiting a hearing on his motion for habeas corpus, officers with TransCorp America, a private extradition transportation company, arrived at the jail with paperwork indicating that they were to transport Cowan back to Georgia.  Defendants Goleman and London, officers on duty at the time, released Plaintiff to the TransCorp officers, and Plaintiff was transported to Georgia and to the custody of the Georgia Department of Corrections.  Cowan complains that Defendants' actions were in violation of the state court summons for the habeas hearing and therefore constituted false arrest and false imprisonment.  He seeks compensatory, nominal, and punitive damages as relief.

Individuals have a federal right to challenge their extradition by seeking a writ of habeas corpus.  *Roberts v. Reilly*, 116 U.S. 80 (1885).  In *Crumley v. Snead*, 620 F.2d 481 (1980), the Fifth Circuit recognized a cause of action under § 1983 for denial of the right set forth in *Roberts*.  The question before this court is whether Plaintiff has come forward with evidence to support a finding that any of the individual Defendants violated this right.  Defendants argue that there is no evidence of the personal involvement on the part of Calcote, Rushing and Boone, and that all Defendants are protected by qualified immunity.

In support of their motion, Calcote, Rushing, Boone, Goleman and London have each submitted an affidavit.  Both Calcote and Boone state in their affidavits that prior to October 10, 2005, they had no knowledge that Cowan had filed a motion for writ of habeas corpus challenging his extradition.  They also state that they were unaware that

3

the transfer had been arranged until after Cowan had been returned to Georgia. Rushing, the officer who accepted the summons on behalf of Calcote, stated as follows in his affidavit: Rushing was the investigator on the charges for which Cowan was arrested. After his arrest, Cowan indicated to him that he did not wish to waive extradition, and Rushing informed the state of Georgia of this fact. On October 6, 2005, Rushing accepted from Matt Kitchens, Cowan's attorney, documents for Sheriff Calcote. Rushing placed the documents on the sheriff's desk without reading them and having no knowledge of their content or substance. He was not aware prior to October 10, 2005, that Cowan had filed a motion for writ of habeas corpus in the Lincoln County Circuit Court. Like Boone and Calcote, Rushing had no knowledge of the transfer until after it had been effected. Defendants Goleman and London state in their affidavits that they were likewise unaware of Cowan's filing of the motion for writ of habeas corpus and that it was not until the TransCorp America officers arrived at the jail that they learned that Cowan's transfer to Georgia had been arranged.

In an attempt to establish knowledge and culpability on the part of Defendants, Plaintiff has submitted the affidavit of his attorney at the time, Matt Kitchens. Kitchens states that after filing the motion for habeas corpus and having the summons and writ issued on October 6, he personally took these documents to the Lincoln County Sheriff's Office, where he was met by Officers John Whitaker and Steve Rushing. When Kitchens asked for Sheriff Calcote, Officer Whitaker informed Kitchens that Sheriff Calcote was not in the office. Kitchens then stated that he was there to serve papers on the sheriff. Kitchens goes on to state as follows in his sworn statement: "Officer Rushing asked me if the papers related to Cowan. I told him that they did and I explained to him what they

4

were. He told me that Georgia badly wanted Mr. Cowan back, but that he knew Mr. Cowan did not want to go back there. I told him I knew this, and it was the purpose of our filing the motion and requesting the hearing. Officer Rushing told me that he would be sure the Sheriff received the papers."

Plaintiff has not attempted to support his motion with any other evidence of record. Nevertheless, the undersigned has considered Cowan's deposition testimony to determine whether his claim should survive Defendants' motion. Cowan testified that during his incarceration, Defendant Rushing repeatedly tried to convince him to waive his right to extradition, but that he refused. Instead, he had his attorney file the motion for habeas corpus. Nevertheless, around noon on Sunday, October 9, 2005, two officers later identified as Defendants Goleman and London came to his cell and told him to pack his belongings because the transportation officers from Georgia had arrived. Cowan responded by insisting that his lawyer had filed for a writ of habeas corpus and that he was not to be extradited prior to his hearing on October 31. He also showed Goleman the summons for the hearing and asked the officers to contact the sheriff or Deputy Boone to confirm what he was saying, but they refused. According to Cowan, one of the officers threatened him with a taser if he did not go with the TransCorp officers.

Cowan's testimony creates a factual dispute as to whether Rushing knew the nature of the documents delivered by Kitchens. But even assuming Cowan's version of the facts to be true, he has not established any knowledge or involvement on Rushing's part concerning his transfer to Georgia. Furthermore, there is no evidence that Boone was involved in any way. As for Calcote, Plaintiff's evidence does not indicate that Calcote actually saw or reviewed the papers delivered by Kitchens or otherwise knew of

Cowan's legal challenge to extradition or of Georgia's arrangements to transport him back to that state. Neither has Cowan come forward with any evidence tending to show that the transfer was somehow the result of Sheriff Calcote's failure to train or supervise his staff. In short, there is no evidence that either Calcote, Rushing, or Boone interfered with Plaintiff's right to challenge his extradition.

The evidence in support of Plaintiff's claims suggests a greater degree of involvement by Goleman and London. Plaintiff testified that he informed these defendants that he had a pending habeas action and should not be transferred until after his hearing and that he showed Goleman the summons. Assuming these allegations to be true, it could be argued that Goleman and London should have taken the time to examine the summons and contact the sheriff to verify Cowan's story and determine whether Cowan should be turned over to the TransCorp officers. Of course, there is no evidence that the sheriff knew about the habeas corpus motion at this point, but he may have inquired further and learned of it if Goleman or London had contacted him. Even so, a reasonable fact-finder could conclude that if Cowan advised these officers of the hearing on his habeas motion, they were negligent in failing to take any further action.

Having only addressed this particular cause of action in the single case of *Crumley*, the Fifth Circuit has not had the opportunity to consider what degree of culpability is necessary to make out a violation of the right delineated in *Roberts.* It seems clear, however, that more than negligence is required. The right is closely akin to the right to due process, and it is well-established that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento*

*v. Lewis*, 523 U.S. 833, 848-49 (1998).² The evidence of record does not support a finding that Goleman and London intentionally interfered with Cowan's right to challenge his extradition or that their actions constituted anything other than negligence. To the extent that an argument could be made that negligence is sufficient for a *Roberts* violation, Defendants' affirmative defense of qualified immunity would protect them from liability, in that the law is not clearly established, and was not at the time of the incidents at issue, that mere negligence can constitute a violation of the right to challenge extradition. *See Chiu v. Plano Independent School Dist.*, 339 F.3d 273, 284 (5th Cir. 2003) (defense of qualified immunity can be overcome only if an objectively reasonable officer would know that his conduct was illegal given the facts available to him and the law that was clearly established at the time).

Furthermore, even if Plaintiff's evidence leads to a reasonable inference of a degree of culpability greater than negligence on the part of Goleman and London, these defendants would still be cloaked with qualified immunity. In order to pierce the protections of qualified immunity, a plaintiff must allege the violation of a right the contours of which are sufficiently clear so that all reasonable officers, in the defendants' place, would know that their actions violated federal law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiff's cause of action rests solely on *Crumley*, a single Fifth Circuit case which is not a part of a widely discussed or well-established jurisprudence.

---

²In *Crumley*, a case factually similar to the present one, the court seemed to assume that bad faith on the part of the defendant would be a necessary element of a cause of action, stating in a footnote that whether the sheriff acted in bad faith was "an issue to be resolved at trial." *Id.* at 482 n.2.

The undersigned does not go so far as to say, as a Florida district court has done, that a single case can *never* be the basis of "clearly established" law for purposes of qualified immunity. *See Blanco v. City of Clearwater, Fla*, 9 F.Supp. 2d 1316 (M.D. Fla.1998) ("A single case does not establish the law in a sufficiently concrete context so as to defeat the qualified immunity defense."). But the fact that Plaintiff's cause of action is grounded in a single case is certainly relevant to the qualified immunity determination.[3] This fact, plus the unique factual situation of this case, leads the undersigned to conclude that Goleman and London are entitled to qualified immunity. Plaintiff was a convicted felon over whom the state of Georgia was clearly entitled to custody - and over whom that state would still have had custody, but for Cowan's escape from prison. He had lived as a fugitive under an assumed name in the state of Mississippi for seven years and, after his arrest, had repeatedly indicated to officers at the jail that he (understandably) did not want to return to the custody of the Georgia Department of Corrections to serve the remainder of his thirty-year sentence. Given these facts, it cannot be said that *all* reasonable jailers in the position of Goleman and London, when presented with extradition papers by

---

[3] Indeed, one court has concluded, albeit in a somewhat different context, that the law set forth in *Crumley* is not clearly established for purposes of qualified immunity analysis. *Payne v. Dickerson*, No. 3:07cv3-P-D, 2008 WL 1724003, p. *10-11 (N.D. Miss. Apr. 10, 2008). In *Payne*, the plaintiff brought an action under § 1983 alleging that his rights had been violated by the defendants' failure to follow extradition procedures. The *Payne* court cited *Crumley* as having established an enforceable right for compliance with extradition procedures. The *Payne* court went on, however, to conclude the law of *Crumley* was not clearly established because the Fifth Circuit had subsequently reached a contrary result in the unpublished case of *Nichols v. McKelvin*, No. 94040896, 1995 WL 2410792 (5th Cir. Apr. 12, 1995). In *Nichols*, the court rejected the plaintiff's claim that his rights were violated by the defendants' failure to extradite soon enough. Neither *Payne* nor *Nichols* concerned an action for interference with the right to bring a habeas action challenging extradition.

officers ready to transport Cowan back to Georgia, would have known that they were violating federal law by failing to credit Cowan's claim that he should not be extradited or failing to seek to verify it. *See Thompson v. Upshur County, Texas*, 245 F.3d 447, 459 (5th Cir. 2001) (to overcome defense of qualified immunity, plaintiff must show "that all reasonable officials similarly situated" would have known that their actions violated the law). For these reasons, Goleman and London are likewise entitled to summary judgment.

To the extent that Plaintiff is attempting to hold any of the Defendants liable in their official capacities, those claims fail as well. An action against a government official is essentially one against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "It is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation." *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008). Cowan has neither alleged nor come forward with any evidence that would support an inference that his extradition prior to his hearing was the result of a county policy or custom.

The undersigned concludes, in the alternative, that the specific facts of this case indicate that any denial or interference with a hearing on Cowan's habeas petition, as actually filed, did not result in a denial of his right to challenge his extradition. Cowan's habeas petition challenged his extradition to Georgia based upon the lack of an "exemplification" on the charge of felony escape. However, the rendition warrant did not order extradition on the charge of felony escape; rather, it directed that Cowan be extradited based upon the seven felonies for which he had already been convicted and

9

on which he was serving his Georgia sentence. Cowan's habeas petition did not challenge extradition for those seven felony convictions. In short, Cowan was not denied a hearing on a habeas petition challenging extradition on the charges for which he was actually extradited.[4]

The remaining matter to be addressed is Plaintiff's state law claims for false imprisonment and kidnaping. As Defendants point out, these claims are barred by Plaintiff's failure to follow the requirements of the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1 *et seq.* They are also barred by that statute's "inmate exception," Miss. Code Ann. § 11-46-9(1)(m).

Accordingly, the undersigned concludes that Plaintiff's motion should be denied and that Defendants are entitled to summary judgment on all of Plaintiff's claims. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 28th day of February, 2011.

/s/ F. Keith Ball

UNITED STATES MAGISTRATE JUDGE

---

[4] It does appear that Cowan was eventually charged with felony escape, as he pled guilty to this charge after his return to Georgia.