IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

EDMUND G. COWAN                                                                                          PLAINTIFF

V.                                                             CIVIL ACTION NO.: 3:07-CV-585-DPJ-FKB

WILEY J. CALCOTE, et al.                                                                          DEFENDANTS

ORDER

This civil-rights action is before the Court on the Report and Recommendation [98] of Magistrate Judge F. Keith Ball. Judge Ball recommended entry of judgment in favor of all Defendants, and Cowan objected [99]. After due consideration, the Court finds that the Report should be adopted in part and rejected in part with the following modifications.

I.      Facts & Procedural History

The Court finds that the magistrate judge thoroughly reviewed the facts of this case, and as such, they are adopted as laid out in the Report. Below, the Court reviews the parties' cross-motions for summary judgment [83, 84, 92] in light of the record.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

    A.    Individual-capacity Claims

Cowan asserts individual-capacity claims against Sheriff Calcote, Deputy Sheriff Rushing, Administrator Boone, and Jailers London and Goleman for violation of his civil rights under 42 U.S.C. § 1983. As explained below, the Court finds that neither Rushing nor Boone "caused" the violation of Cowan's rights, and thus they are entitled to summary judgment. The Court further finds that although Sheriff Calcote failed to promulgate a policy protecting Cowan's pre-extradition rights, and that the absence of such policy may have had a causal connection to the violation of Cowan's rights, Cowan has not demonstrated that Calcote's

2

inaction was objectively unreasonable under clearly established law.  Thus Sheriff Calcote is protected by qualified immunity and is entitled to summary judgment.  But the Court finds that London and Goleman are not protected by qualified immunity and are therefore not entitled to summary judgment.

      1.      Rushing and Boone

There is no respondeat superior liability under § 1983.  *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, a plaintiff must prove that the defendants directly participated in the denial of his constitutional rights.  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("In a personal-capacity suit, 'it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Even assuming Rushing knew of Cowan's pending habeas hearing, Cowan has not rebutted Rushing's claim that he was unaware of Cowan's transfer until after it occurred.  And it appears Boone knew of neither the hearing nor the transfer.  Cowan has failed to establish that Rushing or Boone caused his alleged constitutional deprivation.  Thus, Rushing and Boone are entitled to summary judgment.

      2.      Calcote

Although Sheriff Calcote avers that he did not directly participate in Cowan's transfer, a supervisory official can be individually liable if a failure to promulgate policies to protect the constitutional rights of prisoners causes a constitutional deprivation.  *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citation omitted).  But before reaching that question, the Court must consider Calcote's claim to qualified immunity.

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). The qualified immunity analysis is a two-step inquiry in which the Court determines (1) "whether [the] plaintiff alleged a violation of a clearly established constitutional right," and (2) "whether the official's conduct was objectively reasonable under clearly established law existing at the time of the incident." *Goodman*, 571 F.3d at 395 (internal punctuation, emphasis, and citations omitted). These questions can be addressed "in any sequence." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)).

Under step one, the Court concludes that Cowan suffered a deprivation of his constitutional rights. The Supreme Court has long recognized that "individuals have a federal right to challenge their extradition by writ of habeas corpus." *Crumley v. Snead*, 620 F.2d 481, 483 (5th Cir. 1980) (citing *Roberts v. Reilly*, 116 U.S. 80 (1885)). In *Crumley*, the Fifth Circuit held, "[T]he right to the hearing is one secured by the Constitution and laws of the United States. Any denial of this right gives rise to a cause of action under 42 U.S.C. § 1983." *Id.*

Here, Cowan petitioned the Lincoln County Circuit Court for a writ of habeas corpus. Circuit Judge Michael Taylor executed a writ on October 6, 2005, and set a hearing for Cowan's extradition challenge on October 31. Nevertheless, Cowan was released into the custody of TransCor America officers for extradition on October 9, 2005. Cowan's right to challenge his extradition in a habeas proceeding was violated when he was extradited prior to his hearing.

At step two, Cowan must show that Calcote's alleged failure to promulgate policies was not objectively reasonable. "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted). To make this determination, the Court must consider the circumstances of the case and decide whether the plaintiff has "allege[ed] facts sufficient to demonstrate that no reasonable officer could have believed [the defendant's] actions were proper." *Id*.

In the context of this claim, clearly established law requires proof that Calcote was "deliberately indifferent" to Cowan's constitutional rights in failing to enact prisoner extradition policies. *See Goodman*, 571 F.3d at 395 (listing elements of a § 1983 failure-to-train-or-supervise claim) (citation omitted); *see also Braumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008) ("[I]n a[n individual-capacity] claim alleging failure to promulgate policy as a basis for § 1983 liability, the failure must be 'an intentional choice' and amount to subjective deliberate indifference."). Thus, although step two of the qualified immunity analysis is an objective standard, the subjective deliberate-indifference test must be considered when determining whether one acts with objective reasonableness. As the Fifth Circuit explained in *Hare v. City of Corinth, Mississippi*, "the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident . . . . And, under that standard—the minimum standard not to be deliberately indifferent—the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable." 135 F.3d 320, 328 (5th Cir. 1998).

5

Calcote admits that the department had no policies—official or otherwise—regarding the extradition of prisoners. But Cowan's premature extradition alone is insufficient to establish that Calcote was deliberately indifferent to the rights of prisoners in failing to promulgate such policies. In *McCully v. City of North Richland Hills*, the Fifth Circuit reversed the district court's denial of summary judgment and held that supervisory police officers were not individually liable for the unconstitutional acts of their subordinate arising from the shooting of a criminal suspect during a raid. 406 F.3d 375, 377, 381 (5th Cir. 2005). The plaintiff argued that the supervisors' failure to train or supervise their subordinate constituted deliberate indifference. *Id.* at 378. But the court noted the "stringent standard of fault" required to establish supervisory liability. *Id.* at 381 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir.1998)). Thus, "[t]o satisfy the deliberate indifference [test], a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). The court found that no such patten existed. *Id.* at 382–83 ("We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference.") (citations omitted). Finding no deliberate indifference in McCully, the Court reversed the trial court's denial of qualified immunity. *Id.* at 386.

Similarly, no pattern of violations exists here, and therefore, Calcote's failure to promulgate policy was not "obviously likely to result in a constitutional violation." *See id.* at

6

381. Cowan failed to adduce any evidence that other Lincoln County prisoners have been extradited prior to their habeas corpus hearings. Thus, Sheriff Calcote's actions were objectively reasonable, and he is entitled to qualified immunity.

   3. London and Goleman

Unlike the other defendants, London and Goleman directly participated in Cowan's transfer to TransCor personnel. And viewed in the light most favorable to Cowan, it appears they knew Cowan had been granted a hearing to challenge extradition. Although Defendants dispute this fact, Cowan claims that he informed London and Goleman of his habeas hearing when they came to his cell to transfer him. Cowen also claims that he showed London and Goleman documentation supporting his claims. *See* Defs.' Mot. [84] Ex. A, Cowan Dep. 34:21–35:11.[1] Because Cowan's deposition testimony is sufficient record evidence to support his claims at the summary-judgment stage, his allegations create a question of fact. But London and Goleman could still prevail on summary judgment if they are entitled to qualified immunity.

As noted *supra*, the Court must determine whether Cowan's right to challenge his extradition was "clearly established" such that all reasonable jailers under the circumstances of this case would have know that surrendering Cowan for extradition—despite being shown evidence of his pending habeas hearing—was a violation of that right. *Saucier*, 533 U.S. at 201.

---

[1] While it is unclear whether Cowan had a copy of the writ of habeas corpus issued by Judge Taylor in his possession at the time of his transfer—let alone whether he showed the writ to the jailers—it does appear that Cowan possessed a copy of the summons issued to Sheriff Calcote. Cowan claims that, at a minimum, he showed the summons to the jailers before he was transferred. Cowan further claims that he explained the summons was for his habeas corpus hearing. *See* Def.'s Mot. [84] Ex. A, Cowan Dep. 34:21–35:11.

Though this inquiry presents a close question in light of the facts of this case, ultimately the Court concludes that the right was clearly established.

"Because qualified immunity protects officers who 'reasonably but mistakenly' violate a plaintiff's constitutional rights, the [jailers] are entitled to qualified immunity [only] if a reasonable person in their position 'would have believed that [their] conduct conformed to the constitutional standard in light of the information available to [them] and the clearly established law.'" *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)) (second and third alterations in original). The clearly established law in the Fifth Circuit is generally defined by the decisions of the Fifth Circuit Court of Appeals and the United States Supreme Court. *See McClendon v. City of Columbia*, 305 F.3d 314, 328 & n.10 (5th Cir. 2002) (en banc) (declining to "rigidly define the applicable body of law," but noting that "[o]ur [qualified immunity] inquiry ends . . . if we find from examining the decisions of the Supreme Court and our own decisions that the law was clearly established in this circuit." (quoting *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 748 (5th Cir. 1993))).

In his Report, the magistrate judge concluded that, in allowing Cowan to be extradited despite his allegations of a pending habeas hearing, London and Goleman had at worst been negligent. Judge Ball then found that "the law is not clearly established, and was not at the time of the incidents at issue, that mere negligence can constitute a violation of the right to challenge extradition." Report [98] at 7. But the inquiry is whether Cowan's right to a habeas hearing challenging his extradition was clearly established. In other words, Cowan's cause rests on the

broader right to challenge one's extradition under the United States Constitution, Article 4, Section 2, and its implementing act, 18 U.S.C. § 3182.

As stated, the Fifth Circuit held in *Crumley* that "the right to the hearing is one secured by the Constitution and laws of the United States." 620 F.2d at 483 ("Any denial of this right gives rise to a cause of action under 42 U.S.C. § 1983."). *Crumley* was nothing new. The right to challenge extradition in a habeas proceeding was recognized by the United States Supreme Court more than 120 years ago. *Roberts*, 116 U.S. at 94; *c.f. Atkinson v. Hanberry*, 589 F.2d 917, 920 n.6 (5th Cir. 1979) (denying prisoner's claim for pre-transfer evidentiary hearing and noting that "the only challenge to extradition is by writ of [h]abeas corpus"); *Breazeale v. Bradley*, 582 F.2d 5, 6 (5th Cir. 1978) (noting that if true, petitioner's allegations that he was extradited while his state habeas petition was pending would constitute a violation of the constitution or the federal extradition statute). And the Fifth Circuit has continued to recognize a prisoner's right to challenge extradition through habeas proceedings, though not in cases factually similar to this one. *See, e.g.*, *Edwards v. Bowles*, 115 F. App'x 208, 208 (5th Cir. 2004); *Good v. Allain*, 823 F.2d 64, 67 (5th Cir. 1987); *McDonald v. Burrows*, 731 F.2d 294 (5th Cir. 1984). So have the majority of circuits. *See, e.g.*, *Harden v Pataki*, 320 F.3d 1289, 1293 & n.4 (11th Cir. 2003) (collecting cases).

Assuming, as the Court must in the summary-judgment posture, that London and Goleman knew of Cowan's pending habeas hearing, London and Goleman are not entitled to

9

summary judgment based on qualified immunity. By the same token, the dispute over London and Goleman's knowledge precludes Cowan's cross-motion for summary judgment.[2]

        B.        Official-capacity Claims

To the extent that Cowan's petition can be read to assert official-capacity claims against the defendants, these claims follow "largely the same analysis" as Cowan's individual-capacity claims. *Goodman*, 571 F.3d at 396. In his Report, the magistrate judge concluded that Defendants were entitled to summary judgment on Cowan's official-capacity claims. Report [98] at 9. Cowan objects, arguing first that Lincoln County should be held liable for the "deliberate indifference" of Administrator Ralph Boone, and second, that the County should be held liable for Sheriff Wiley Calcote's failure "to train or supervise his staff." Pl.'s Obj. [99] at 4.

---

    [2]It is worth noting that Cowan is now limited to nominal and potentially punitive damages on his federal claims. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1014 (5th Cir. 2003) ("The law is well-established in this Circuit that plaintiffs may recover nominal damages when their constitutional rights have been violated but they are unable to prove actual injury."). Compensatory damages are foreclosed because the extradition documents were facially in order, and Cowan had already been convicted in Georgia of the crimes for which he was extradited. *See McDonald*, 731 F.2d at 296. Damages for emotional distress are likewise unavailable for lack of any physical injury. 42 U.S.C. § 1997e(e) (2006) ("No federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."). Finally, Cowan sought punitive damages in his Complaint, and they are available under § 1983. *Smith v. Wade*, 461 U.S. 30, 51 (1983) (explaining that in a § 1983 case, "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages"). But the issue has not been explored in the parties' submissions. Thus, should this case proceed to trial, the Court will wait until the conclusion of Cowan's case in chief to determine whether the evidence supports offering the issue of punitive damages to the jury. To the extent Cowan seeks punitive damage on his state-law claims, recovery is barred by the Mississippi Tort Claims Act. Miss. Code Ann. 11-46-15(2) (2005).

An official-capacity claim against a government official is essentially a claim against the government itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1990). Since there is no respondeat superior liability under § 1983, *Monnell*, 436 U.S. at 691, "[i]t is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation," *Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 436 (5th Cir. 2008). But only the actions of final policymakers create official policies or customs for purposes of § 1983—the actions of lower-level officials generally do not. *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 169 (5th Cir. 1996) ("Only those officials who have final policymaking authority may by their actions subject the government to liability under 42 U.S.C. § 1983.") (citation and internal quotations omitted ). The Fifth Circuit has held: "Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." *Id.* at 165. And in some cases, even "an official who has been delegated policymaking authority" is considered a policymaker. *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 n.20 (5th Cir. 2001) (citing *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). Yet Cowan offers no evidence to suggest that Calcote delegated any policymaking authority to Boone. Thus, the Court concludes that Boone was not a policymaker. While Cowan's official-capacity claim against Sheriff Calcote may be legally cognizable, his official-capacity claim against Administrator Boone is not.

Nevertheless, Cowan's official-capacity claim against Calcote ultimately fails because he has not established the existence of an official policy or custom that resulted in his extradition prior to his habeas hearing. Indeed, Cowan acknowledges that Defendants deny the existence of any policies regarding prisoner extradition. *See* Pl.'s Resp. [88] at 5. Nor is there any record

11

evidence to suggest there existed an unofficial "custom." *See Pineda v. City of Hous.*, 291 F.3d 325, 329–31 (5th Cir. 2002) (custom requires the existence of a "persistent and widespread practice"). And insofar as Cowan argues that the absence of policy gives rise to an official-capacity claim, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation and alteration omitted); *see also Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (official-capacity claim based on absence of official policy requires proof of "deliberate indifference to the plaintiff's constitutional rights"). As noted *supra*, "proof of deliberate indifference . . . generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" *Id.* (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).[3] Cowan offers no evidence to suggest that other prisoners have been prematurely extradited prior to a constitutionally guaranteed habeas corpus hearing. Thus, Lincoln County cannot be held liable for Sheriff Calcote's alleged failure to train jailers under his supervision on the pre-extradition rights of prisoners.

    C.      State-law Claims

---

[3] In *Brown v. Bryan County*, the Fifth Circuit recognized a narrow, single-incident exception to the general rule in failure-to-train cases. *See* 219 F.3d 450, 461 (5th Cir. 2000). The court has since held that the exception applies "only where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge*, 336 F.3d at 373 (citing *id.*). But the court in *Burge* refused to apply or expand the single-incident exception where the plaintiff offered no evidence that the Sheriff's employees "had a reputation for recklessness, or that the on-the-job training those employees received was inadequate." *Id.* Similarly, Cowan has offered no evidence to support the application of this narrow exception.

Judge Ball found that Cowan's state-law claims were barred by several provisions of the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1 to -23. The Court adopts these findings without exception.

IV.     Conclusion

Having concluded that summary judgment is proper as to Lincoln County, Sheriff Calcote, Deputy Rushing, and Administrator Boone, Cowan is entitled to proceed to trial on only his individual-capacity claims against London and Goleman. The Court notes that the ruling on whether Cowan's rights were clearly established is immediately appealable. *See Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)); *accord Burge v. Parish of St. Tammany*, 187 F.3d 452, 478 (5th Cir. 1999) ("[T]o the extent that an order of a district court rejecting a governmental official's qualified immunity defense turns on a question of law, it is a final decision within the meaning of [28 U.S.C.] § 1291 under the *Cohen* collateral order doctrine, and therefore is subject to immediate appeal."). Should Defendants choose not to exercise their right to appeal, they are instructed to contact the Court within five days of the date such right expires to set the case for trial. Cowan's Motion for Summary Judgment is denied for the reasons stated.

**SO ORDERED AND ADJUDGED** this the 21st day of June, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE